IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| KAVIN KIKUYAMA, *et al.*,<br><br>Plaintiff,<br><br>vs.<br><br>KAIPO CORDEIRA, *et al.*,<br><br>Defendants. | Case No. 25-cv-00439-DKW-WRP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

On November 7, 2025, Defendants K. Cordeira Holdings, LLC, Kaipo Cordeira, and Kyle Shockley filed a motion to dismiss Plaintiffs Kikuyama Holdings, Inc. and Kavin Kikuyama's Complaint. Dkt. No. 8. Having reviewed the Complaint, the parties' briefs, and the relevant legal authorities, and considered the parties' presentations at oral argument, the Court agrees that *partial* dismissal is appropriate. Accordingly, the motion to dismiss is GRANTED IN PART and DENIED IN PART, with leave to amend, as described below.

## FACTUAL & PROCEDURAL BACKGROUND

### I.    The Complaint

On February 1, 2018, Kikuyama and Cordeira entered into an operating agreement that established Akamai Maritime Solutions, LLC ("AMS"), a jointly owned company specializing in the maintenance and outfitting of naval and

commercial vessels.  Dkt. No. 1-1 ¶¶ 10 & 16.  The operating agreement set up AMS as a partnership and provided that Kikuyama and Cordeira would each hold a 50% membership interest in AMS, owe one another "fiduciary duties of disclosure, good faith and fair dealing, and "refrain from comingling their assets with AMS's."  *Id*. ¶¶ 16–17, 20.  While Kikuyama and Cordeira each contributed $50,000 in seed money, Kikuyama provided an additional $100,000 at Cordeira's request.  *Id*. ¶ 19.

In 2021, Cordeira and his girlfriend, Shockley (whom Cordeira had hired as AMS's bookkeeper), retained a Utah-based law firm, Kyler Kohler Ostemiller & Sorenson ("KKOS"), to restructure AMS as an S corporation, ostensibly to provide tax savings.  *Id*. ¶ 22.  Cordeira and Shockley retained KKOS unilaterally and in spite of Kikuyama's reservations about why restructuring was necessary or why it should be done by a non-Hawaiʻi based law firm.  *Id*. ¶¶ 24–25.  Cordeira and Shockley represented to Kikuyama that KKOS would effectuate the restructuring by creating holding companies for both himself and Kikuyama, which would then become the members of AMS.  *Id*. ¶¶ 22, 53.  Instead, KKOS created a single holding company, Kikuyama Holdings, the sole member of which was Kikuyama.  *Id*. ¶ 25.  Cordeira, meanwhile, created a new entity, Akamai Maritime Solutions Partnership LLC ("AMSP").  Kikuyama Holdings and AMS were listed as members of AMSP, while Cordeira was listed as its manager.  *Id*.

On April 1, 2022, Cordeira unilaterally renamed AMS to K. Cordeira Holdings, LLC ("KCH"). *Id*. ¶ 26. Cordeira further "tried to force Kikuyama to sign papers" relinquishing control over and closing AMS's existing bank account, and to allow Cordeira to open a new account using AMS's EIN for Kikuyama Holdings. *Id*. ¶ 27. Examining AMS's records, Kikuyama learned that Cordeira had withdrawn $20,000 from AMS without Kikuyama's consent. *Id*. ¶ 28.

On July 13, 2022, Kikuyama sent a demand letter to Cordeira in which he (1) refused to surrender control of AMS's bank account; and (2) stated that Cordeira had improperly withdrawn money from AMS's account. *Id*. ¶ 30. Kikuyama learned that Cordeira had taken further unauthorized and improper actions, including designating Cordeira as the sole member and manager of AMS and KCH; taking out a credit card on behalf of AMS and KCH and using it for personal expenses; unilaterally changing AMS and KCH's health insurer and terminating Kikuyama's health insurance; and changing AMS's compensation structure to prevent Kikuyama from receiving guaranteed payments. *Id*. ¶¶ 31–39. Kikuyama and his counsel requested access to AMS and KCH's records and financial statements, but "each request [was] ignored or only partially satisfied." *Id*. ¶ 40.

On January 15, 2024, Cordeira and Shockley improperly removed Kikuyama as a member of AMS. *Id*. ¶ 41. Cordeira continued to use AMS and KCH "as a personal piggy bank" by using company funds to purchase personal vehicles and

child-care services; provide close family and friends "generous compensation package[s]"; and pay his personal taxes.  *Id.* ¶¶ 42–51.

## II.   Procedural History

On September 17, 2025, Plaintiffs initiated this action in Hawai'i state court. Dkt. No. 1-1.  On October 9, 2025, the action was removed to this Court by Defendants.  Dkt. No. 1.

Plaintiffs' Complaint asserts the following Counts: (1) intentional or fraudulent misrepresentation or inducement; (2) negligent misrepresentation; (3) breach of contract; (4) breach of fiduciary duty; (5) unjust enrichment; (6) violations of Hawaii Revised Statutes ("HRS") § 428; (7) equitable accounting; (8) conversion; and (9) judicial dissolution and accounting ("Counts 1–9").  Dkt. No. 1-1 ¶¶ 52–100.

On November 7, 2025, Defendants moved to dismiss the Complaint, arguing that (1) the Court lacked personal jurisdiction over Cordeira and Shockley; (2) the Complaint failed to state a claim against Shockley pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6); (3) Count 9 should be dismissed because judicial dissolution and accounting are remedies, not independent causes of action; (4) Plaintiffs' derivative claims on behalf of AMS and AMSP should be dismissed because Plaintiffs failed to verify their Complaint pursuant to Fed.R.Civ.P. 23.1; and (5) Plaintiff's tort claims against Shockley are barred by the economic loss doctrine.  Dkt. Nos. 8 & 8-1.

- 4 -

Plaintiffs oppose, responding that (1) the Court has specific personal jurisdiction over Cordeira and Shockley because the claims arise from acts they committed in Hawaiʻi against fellow Hawaiʻi residents; (2) the claims against Shockley are adequately pled; (3) Count 9 arises from violations of HRS § 428 and constitutes an independent cause of action; (4) the lack of a verification is not grounds for dismissal and, regardless, the Complaint is now verified; and (5) the economic loss doctrine does not apply because Plaintiffs' claims against Shockley do not arise from a contractual relationship.  Dkt. No. 13.  Plaintiffs also filed a verification of the Complaint, which affirmed that Kikuyama was the sole member of Kikuyama Holdings.  Dkt. No. 12.  Defendants replied, reiterating their arguments concerning personal jurisdiction, the failure to state a claim, and economic loss.  Dkt. No. 14.  Defendants further argued that Kikuyama's verification was "defective." *Id.* at 8–9.  On January 2, 2026, the Court held a hearing on the motion to dismiss—this Order follows.  Dkt. No. 15.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires." Fed.R.Civ.P. 15(a)(2).  Indeed, the Ninth Circuit has made clear that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and quotation marks omitted).  However, justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency. *Abagninin v.*

*AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

## DISCUSSION

Before the Court is Defendants' motion to dismiss. Dkt. No. 8. The Court addresses each of the motion's arguments below.

## I.    Personal Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move for dismissal due to a lack of personal jurisdiction. When a defendant does so, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). As in this case, when an evidentiary hearing is not held, while the plaintiff cannot rest on the allegations of its complaint, uncontroverted jurisdictional allegations may be taken as true, while related factual disputes are to be resolved in the plaintiff's favor. *Id.* At the motion to dismiss stage, plaintiffs are required only to make out a *prima facie* showing of personal jurisdiction. *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1119 (9th Cir. 2002).

Personal jurisdiction encompasses two distinct concepts: (1) general personal jurisdiction; or (2) specific personal jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S.Ct. 1773, 1779–80 (2017).

Defendants move to dismiss on the grounds that Plaintiffs have failed to show general or specific personal jurisdiction over Cordeira and Shockley.  Dkt. No. 8-1 at 4–8.  In their opposition brief, Plaintiffs respond only as to specific personal jurisdiction, effectively conceding that general personal jurisdiction is not present. Dkt. No. 13 at 3–4; *see also Walsh v. Nevada Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (holding that a plaintiff who failed to "raise [an] issue" in response to a defendant's motion to dismiss "effectively abandoned" the argument). The Court thus turns to whether Plaintiffs "can establish personal jurisdiction by demonstrating that specific jurisdiction is proper." *Delta Inn, Inc. v. Hyundai Sec. Co.*, 2016 WL 11782790, at *2 (W.D. Wash. Sept. 20, 2016).

Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation" and exists when "the defendant's suit-related conduct [creates] a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (internal quotation marks and citations omitted); *see also Shabanets v. ZF TRW Auto. Holdings Corp.*, 2020 WL 10934650, at *1 (C.D. Cal. Dec. 8, 2020) ("[S]pecific jurisdiction arises when a defendant's contacts with the forum state give rise to the claim in question.").  For a court to exercise specific jurisdiction, the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself" of the forum.  *Freestream Aircraft (Bermuda) Ltd.*

*v. Aero Law Group*, 905 F.3d 597, 603 (9th Cir. 2018).  Additionally, "the claim must be one which arises out of or relates to the defendant's forum-related activities[.]" *Id.*   Finally, "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable." *Id.*

Here, the Court has no doubt that Plaintiffs have established specific personal jurisdiction.  Per the Complaint, all individual parties were Hawai'i residents at the time the relevant conduct took place.  Dkt. No. 1-1 ¶¶ 1–4.  The corporate entities at play—AMS, AMSP, KCH, and Kikuyama Holdings—were all formed pursuant to Hawai'i state law.  *Id.* ¶¶ 2–6.  Moreover, virtually all of the conduct at issue in this action occurred in Hawai'i, including the various allegedly-improper changes Cordeira and Shockley made to the corporate partnership entered into with Kikuyama.  *See*, *e.g.*, *id.* ¶¶ 18, 27, 32.  These facts provide a strong basis for specific personal jurisdiction.  *See Walden*, 571 U.S. at 285 ("[P]hysical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact."); *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (noting that, in determining if a business arrangement created minimum contacts, courts look to whether the defendant "performed some affirmative conduct which allows or promotes the transaction of business within the forum state" (internal quotation marks omitted)); *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987) ("[C]ourts must examine the defendant's contacts with

the forum at the time of the events underlying the dispute when determining whether they have jurisdiction.").

Defendants acknowledge that Cordeira and Shockley were residents of Hawaiʻi and engaged in business activities during their residency, but argue that the claims in this case arise from "internal governance decisions between private parties, not forum-directed conduct." Dkt. No. 8-1 at 6–7. Defendants, in other words, assert that the disputed conduct was purely an internal matter within the relevant entities, and that Plaintiffs have failed to allege that any actions were "purposely directed at Hawaii residents or markets." *Id*. at 7–8. Defendants' assertions are belied by the Complaint, which plainly alleges Cordeira and Shockley directed their allegedly fraudulent conduct at Kikuyama, a Hawaiʻi resident, utilizing the corporate structures of Hawaiʻi-based companies. *See*, *e.g.*, Dkt. No. 1-1 ¶¶ 54, 60, 77.  In short, because the individuals involved in the relevant entities, the entities themselves, and practically all of the individuals' challenged conduct occurred in and/or related to Hawaiʻi, the Complaint's allegations are more than adequate to establish that Defendants purposefully directed their conduct at Hawaiʻi.  *See U.S., ex rel. McCarthy v. Straub Clinic & Hosp., Inc.*, 140 F. Supp. 2d 1062, 1072 (D. Haw. 2001) (finding that defendant "purposefully directed its conduct" at Hawaiʻi where plaintiffs alleged that defendant controlled companies, "conduct[ed] business," and committed the fraudulent conduct at issue within the state).

In sum, this action concerns conduct undertaken in Hawai'i by Hawai'i residents, aimed at other Hawai'i residents, concerning entities formed and/or operating in Hawai'i.  It is difficult to imagine a clearer case of specific personal jurisdiction.  Accordingly, the motion to dismiss on jurisdictional grounds is denied.

## II.    Failure to State a Claim

### a.  Rule 9(b)

Defendants assert that Plaintiffs' claims for intentional or fraudulent misrepresentation under Count 1[1] fail to meet the heightened pleading standards of Rule 9(b).  Dkt. No. 8-1 at 9.  The Court disagrees.

To succeed on a fraudulent misrepresentation claim, a plaintiff must show that "(1) false representations were made by defendants; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon these false representations; and (4) plaintiff did rely upon them."  *Ass'n of Apartment Owners of Newtown Meadows v. Venture 15, Inc.*, 115 Haw. 232, 263 (2007) (internal quotation marks and emphasis omitted).  Claims

---

[1]In the motion to dismiss, Defendants also argue that the negligent misrepresentation claims under Count 2 fail to satisfy Rule 9(b).  Dkt. No. 8-1 at 9.  As Plaintiffs point out, however, Rule 9(b)'s heightened pleading standards apply only to claims grounded in fraud, not negligence.  *See Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1231 (D. Haw. 2010) ("A negligent misrepresentation claim does not require intent, and accordingly is not subject to Rule 9(b).").  Defendants do not mention Count 2 in the section of their reply concerning Rule 9(b), suggesting they agree that Plaintiffs are correct, at least on this point.  To the extent that Defendants continue to press the dismissal of Count 2 on Rule 9(b) grounds, the motion is denied.

sounding in fraud must also satisfy Rule 9(b), which requires a party to "state with particularity" the circumstances constituting fraud. "[C]ircumstances must be alleged with enough specificity "to give defendants notice of the particular misconduct . . . so they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted). To that end, Rule 9(b) demands detailed allegations setting forth "the time, place, and nature of the alleged fraudulent activities." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also Illinois Nat'l Ins. Co. v. Nordic PCL Const., Inc.*, 870 F. Supp. 2d 1015, 1036–37 (D. Haw. 2012) (explaining that allegations of fraud "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged") (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). "[M]ere conclusory allegations of fraud are insufficient." *Moore*, 885 F.2d at 540.

The allegations Plaintiffs plead are far more than conclusory. The Complaint provides that, in 2021, Shockley retained KKOS to restructure AMS, Dkt. No. 1-1 ¶ 22, and falsely represented to Kikuyama that the restructuring would create multiple holding companies for tax benefits. In reality, Cordeira and Shockley used KKOS to seize control of the company, to cut Kikuyama out of it, and to then utilize the remaining entity's assets for personal purposes, *id*. ¶¶ 22 & 53. These are not

threadbare allegations—the Complaint provides precisely the who, what, where, when, and why that Rule 9(b) demands. *See Servco Pac., Inc. v. SkyBridge Glob., Inc.*, 2016 WL 6996987, at *8 (D. Haw. Nov. 29, 2016) (concluding that pleadings met Rule 9(b) requirements where plaintiff "identified with specificity" the misrepresentations forming the fraud claim, as well as "the parties involved" and "the basis for why the statements are false"). Defendants argue that Plaintiffs nevertheless fail to allege "the precise words Cordeira or Shockley said" or specify the exact day and time in which the false representations were made. Dkt. No. 14 at 3. Defendants, however, produce no authority that such specificity is required, particularly in light of the already-detailed pleadings Plaintiffs have provided. Defendants know enough to proceed with their defense of this claim. Accordingly, the motion to dismiss Count 1 on the grounds that it fails to meet the requirements of Rule 9(b) is denied.

### b. Rule 12(b)(6)

Defendants argue that the negligent misrepresentation claims against Shockley should be dismissed pursuant to Rule 12(b)(6) because Plaintiffs failed to allege an independent duty owed by Shockley.[2] Dkt. No. 8-1 at 10–11. The Court agrees.

---

[2]Defendants briefly state that Count 1 (*i.e.* Plaintiffs' fraud claim) against Shockley should also be dismissed pursuant to Rule 12(b)(6). Dkt. No. 8-1 at 10. However, Defendants' only arguments to dismiss under Rule 12(b)(6) concern negligent misrepresentation—no mention is made of any

Plaintiffs do not dispute that the Complaint fails to allege a specific duty owed by Shockley to Kikuyama—rather, Plaintiffs argue that a negligent misrepresentation claim does not require a "duty at all." Dkt. No. 13 at 15.

"Negligent misrepresentation has the following elements: (1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation." *Santiago v. Tanaka*, 137 Haw. 137, 153–54 (2016) (internal quotation marks omitted). Plaintiffs assert that an independent duty is not among these elements and is therefore not required to state a negligent misrepresentation claim. Dkt. No. 13 at 15. This ignores, however, that a "prerequisite to *any* negligence action is the existence of a duty owed by the defendant to the plaintiff." *Molfino v. Yuen*, 134 Haw. 181, 184 (2014) (emphasis added). A negligent misrepresentation claim is no exception to this rule. *See Newtown Meadows*, 115 Haw. at 286 ("[T]he tort of negligent misrepresentation is founded on the breach of a duty[.]" (internal quotation marks omitted)).

Here, the Complaint does not specifically allege any duty owed by Shockley to Kikuyama. Furthermore, given that Shockley was employed by Cordeira as a

---

grounds for dismissing the fraud claim pursuant to Rule 12(b)(6). *See id.* at 10–11. The Court thus declines to consider this argument further.

bookkeeper, it is not obvious what duty she might have owed Kikuyama. Accordingly, the motion to dismiss the negligent misrepresentation claims against Shockley is granted. Because Plaintiffs "could conceivably cure these deficiencies" by identifying the duty they apparently believed was not necessary, this dismissal is without prejudice and with leave to amend. *Jones v. Rising Phoenix Holdings Corp.*, 2025 WL 2802180, at *7 (D. Haw. Oct. 1, 2025); *Lopez*, 203 F.3d at 1130.

## III.    Judicial Dissolution and Accounting

Plaintiffs request judicial dissolution and accounting of AMS and KCH and frame this request as a cause of action under Count 9. Dkt. No. 1-1 ¶¶ 103–06. Defendants move to dismiss Count 9 as an independent cause of action, arguing that judicial dissolution and accounting should instead be understood as equitable remedies, and the Complaint should be "reframed" as such. Dkt. No. 8-1 at 12. Even if dismissed, in other words, Defendants appear to acknowledge that judicial dissolution and accounting would remain available as remedies under counts other than Count 9. Dkt. No. 8-1 at 12.

Plaintiffs respond that Hawaiʻi state statutes provide independent causes of action for dissolution and accounting. More specifically, Plaintiffs rely on two statutes that allegedly establish causes of action for dissolution and accounting. The first, HRS § 428-410, provides that:

A member may maintain an action against a limited liability company or another member for legal or equitable relief, with or without an accounting as to the company's business, to enforce:

(1) The member's rights under the operating agreement;
(2) The member's rights under this chapter; and
(3) The rights and otherwise protect the interests of the member, including rights and interests arising independently of the member's relationship to the company.

The second, HRS § 428-810, states that a limited liability company may be dissolved by the "application of a member . . . , upon entry of a judicial decree" that the "managers or members in control of the company have acted, are acting, or will act in a manner that is illegal, oppressive, fraudulent, or unfairly prejudicial to the petitioner."

Plaintiffs provide no authority, however, indicating that these statutes form the bases of an independent cause of action, nor has the Court found any. Section 428-410 states only that actions for legal or equitable relief may be pursued by members "with or without an accounting"—it does not state that the accounting itself is a cause of action. As for Section 428-810, the language of the statute merely states that a company may be dissolved pursuant to a judicial decree upon finding member or manager misconduct. Both statutes, in short, appear to provide statutory remedies for members whose interests have been violated. The Court further notes that the concept of a judicial accounting as a standalone claim based on Hawaiʻi law has been repeatedly rejected within this district. *See e.g. Barnes v. Sea Hawaiʻi Rafting,*

*LLC*, 493 F. Supp. 3d 972, 982 (D. Haw. 2020) ("[J]udges in this district regularly reject standalone accounting claims, characterizing accounting as a remedy, not an independent cause of action.") (collecting cases), *aff'd sub nom. Barnes v. Kris Henry, Inc.*, 2022 WL 501582 (9th Cir. Feb. 18, 2022).

Given both the language of the cited statutes and available law, the Court agrees with Defendants that judicial dissolution and accounting constitute remedies, not causes of action in themselves. The Court thus grants the motion to dismiss Count 9, albeit with leave to amend should Plaintiffs wish to specify through which remaining counts the remedies of judicial dissolution and accounting are sought.

## IV.  Verification

Initially, Defendants argued that the Court should dismiss the derivative claims because Plaintiffs had failed to verify the Complaint pursuant to Rule 23.1. Dkt. No. 8-1 at 12–13. Taking the argument to heart, Plaintiffs subsequently verified the Complaint, *see* Dkt. No. 12, which typically is sufficient to cure the absence of a verification upon filing, *see N. Acceptance Tr. 1065 v. AMFAC, Inc.*, 51 F.R.D. 487, 493 (D. Haw. 1971) (denying motion to dismiss derivative claims based on a missing verification because "if such failure originally was ground for granting such motion, it has been cured by subsequent verification").

Defendants argue in their reply brief, however, that the now-filed verification is "defective" because the Complaint still fails to comply with Rule 23.1 for two

reasons.  Dkt. No. 14 at 8–9.  First, Rule 23.1(b)(2) requires that the complaint "allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack."  Second, Rule 23.1(b)(3) requires that the complaint "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members," or alternatively "the reasons for not obtaining the action or not making the effort."

Examining the Complaint, it is true that Plaintiffs allege neither that the action is non-collusive for jurisdictional purposes, nor do they describe any efforts made to obtain the desired action—the remaining Rule 23.1 defects identified by Defendants. *See Lantz Ret. Invs., LLC v. Glover*, 2021 WL 6118182, at *18 (E.D. Cal. Dec. 27, 2021) (dismissing for failure to comply with Rule 23.1 where the complaint did not "allege the required information"), *aff'd*, 2023 WL 3533892 (9th Cir. May 18, 2023). Nonetheless, with respect to Rule 23.1(b)(2), there is no remaining dispute as to the Court's jurisdiction, nor any argument that this action is collusive.  As for Rule 23.1(b)(3), there is no apparent board of directors or "comparable authority" to which Plaintiffs might have first petitioned—the only members of AMS and AMSP evident from the Complaint are Kikuyama and Cordeira.  Dkt. No. 1-1 ¶ 25.  Given that Cordeira is a defendant in this case, any attempt by Kikuyama to obtain

Cordeira's consent for this action would almost certainly be futile. That is sufficient reason for "not making the effort," as Rule 23.1(b)(3) expressly permits.

Accordingly, although amendment to comply with Rule 23.1 is not necessary, as the Court has already granted Plaintiffs leave to amend the Complaint above, (*see e.g.* Discussion, Section II(b), *supra*), Plaintiffs are directed to include allegations addressing the aforementioned Rule 23.1 issues as part of their amended pleadings.

## V.    Economic Loss Doctrine

The economic loss rule precludes a plaintiff asserting certain contract claims from also recovering its economic losses in tort. *See Newtown Meadows*, 115 Haw. at 291; *City Exp., Inc., v. Express Partners,* 87 Haw. 466, 469 (1998). The rule is codified at HRS § 663-1.2: "[n]o person may recover damages, including punitive damages, in tort for a breach of a contract in the absence of conduct that: (1) Violated a duty that is independently recognized by principles of tort law; and (2) Transcended the breach of the contract."

> The crux of [the economic loss rule] is the premise that economic interests are protected, if at all, by contract principles, rather than tort principles. Contract law is designed to enforce the expectancy interests created by agreement between the parties and seeks to enforce standards of quality. This standard of quality must be defined by reference to that which the parties have agreed upon. In contrast, tort law is designed to secure the protection of all citizens from the danger of physical harm to their persons or to their property and seeks to enforce standards of conduct. These standards are imposed by society, without regard to any agreement. Tort law has not traditionally protected strictly economic interests . . . in other words, courts have

generally refused to create a duty in tort to prevent such economic losses.

*Newtown Meadows,* 115 Haw. at 291.  The doctrine does not apply to non-tort claims, *AT ML Leasehold HI, LLC v. RCSH Operations, Inc.*, 2021 WL 6052286, at *5 (D. Haw. Dec. 21, 2021), and if a plaintiff's claims "are founded on a breach of duty separate and apart from any contractual duty, then the economic loss rule [also] does not apply," *Adon Constr. Inc. v. Renesola Am. Inc.*, 2019 WL 2236073, at *4 (D. Haw. May 23, 2019).

Defendants move to dismiss Counts 4, 5, and 8[3] against Shockley on the grounds that they are barred by the economic loss doctrine.  Dkt. No. 14 at 6–7.  Plaintiffs do not dispute that the economic loss doctrine may be applied to unjust enrichment, conversion, and breach of fiduciary duty, the claims contained within the referenced counts; rather, Plaintiffs argue that the doctrine is inapplicable to *Shockley* because she was not party to the contracts that created and governed AMS.  Dkt. No. 13 at 20.  Without a contract, Plaintiffs assert that the economic loss doctrine has no place.

---

[3]In the motion to dismiss, Defendants did not specify which particular claims were barred by the economic loss doctrine, an omission that was cured in their reply brief.  Defendants now clarify that the argument is limited to Counts 2, 4, 5, and 8, and only as to Shockley. *See* Dkt. No. 8-1 at 13–14; Dkt. No. 14 at 6.  However, because the Court has already granted dismissal of Count 2 (negligent misrepresentation) on Rule 12(b)(6) grounds, (*see* Discussion, Section II(b), *supra*), it declines to also consider Count 2 here.

The question of the economic loss doctrine's applicability in cases where no contractual relationship exists is not unknown to the courts. *See Hawaii Motorsports Inv., Inc. v. Clayton Grp. Servs.*, 2009 WL 3109941, at *4 (D. Haw. Sept. 25, 2009) ("The economic loss rule becomes more complicated in claims between a plaintiff and a defendant who have no contractual relationship and hence no privity between them." (internal quotation marks omitted)).  Contrary to Plaintiffs' arguments:

> Many courts . . . have expanded the economic loss rule to bar economic recovery in tort cases where there is no contract and, thus, no privity. The policy behind this principle is to prevent potentially limitless liability for economic losses: While the physical consequences of negligence usually have been limited, the indirect economic repercussions of negligence may be far wider, indeed, virtually open-ended.

*Newtown Meadows*, 115 Haw. at 287 (cleaned up, internal quotation marks omitted). In fact, while the present rule may not have always been the case, Hawaiʻi courts now "clearly stand[] for the proposition that the economic loss doctrine bars the recovery of purely economic losses, even in the absence of privity of contract, so long as 'allowing such recovery would blur the distinction between contract and tort law.'" *Leis Fam. Ltd. P'ship v. Silversword Eng'g*, 126 Haw. 532, 538 (Ct. App. 2012) (quoting *Newtown Meadows*, 115 Haw. at 292); *see also Launiupoko Water Co. v. J-M Mfg. Co.*, 2014 WL 6685965, at *3 (D. Haw. Nov. 25, 2014) ("Courts apply the economic loss rule to bar economic recovery in tort cases such as this,

- 21 -

where there is no contract and, thus, no privity between the parties.")(internal

quotation marks omitted)).[4]

Plaintiffs do not acknowledge this reality in Hawai'i law. They do not, for

example, assert that the claims against Shockley are based on a breach of duty

distinct from any contractual obligations, *see Adon Constr.*, 2019 WL 2236073, at

*4, and thus should survive even where the economic loss doctrine applies. The

exact nature of the contractual relationship, if any, between Kikuyama and Shockley

is also not well-defined in the pleadings: the Complaint alleges that Shockley was

hired as a bookkeeper but does not elaborate. Dkt. No. 1-1 ¶ 22.

Accordingly, the Court grants the motion to dismiss as to the claims against

Shockley under Counts 4, 5, and 8 because the lone argument advanced by Plaintiffs

against the application of economic loss has no merit. Because Plaintiffs could cure

their pleadings with respect to economic loss, this dismissal is without prejudice and

with leave to amend. *Jones*, 2025 WL 2802180, at *7; *Lopez*, 203 F.3d at 1130.

---

[4]*Newtown Meadows* was concerned with the applicability of the economic loss doctrine in the
context of construction contracts. 115 Haw. at 287. However, subsequent courts have treated the
*Newtown Meadows* holding to be of more *"general applicability,"* applying the economic loss
doctrine in the absence of a contractual relationship to other claims and in other circumstances.
*Leis Fam.*, 126 Haw. at 538; *Launiupoko Water Co.*, 2014 WL 6685965, at *3 (applying *Newtown
Meadows* to negligent misrepresentation claim).

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss the Complaint, Dkt. No. 8, is GRANTED IN PART and DENIED IN PART. Counts 2, 4, 5, and 8 against Shockley, as well as Count 9, are dismissed without prejudice and with leave to amend, consistent with this Order. The motion to dismiss is denied in all other respects. Should Plaintiffs wish to amend the pleadings, an amended complaint that does not incorporate or rely on previous filings must be filed no later than **February 11, 2026**. If no amended complaint is filed by that date, this action will proceed only on the claims that survive in the present Complaint (Dkt. No. 1-1).

IT IS SO ORDERED.

DATED: January 21, 2026 at Honolulu, Hawaiʻi.



Derrick K. Watson
Chief United States District Judge

Kavin Kikuyama, et al vs. Kaipo Cordeira, et al; Civil No. 25-00439 DKW-WRP;
**ORDER DENYING IN PART AND DENYING IN PART DEFENDANTS'**
**MOTION TO DISMISS**